Peter C. Neumann, NV St. Bar 636
136 Ridge St, Reno, NV 89501
(775) 786-3750
Fax: 786-8791
petercneumann@sbcglobal.net

Eric A. Pulver, NV. St. Bar 7874
Logar & Pulver
1875 Plumas St., Suite 1
Reno, NV  89509
Tel.: 775-786-5040
Fax: 775-786-7544
eric@logarpulver.com

PHILIP STILLMAN, MA St. Bar  555555  (Pro Hac Vice)
Stillman & Assoc.
508 Meadowmist Court
Olivenhein, CA  92024
Tel:  888-235-4279
Fax: 888 235 4279
pstillman@stillmanassociates.com

Attorneys for Plaintiff,  Michael J. Flynn, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Michael J. Flynn, Esq., <br><br> Plaintiff, <br><br> vs. <br><br> Liner, Grode, Yankelevitz, Sunshine, Regenstreif, & Taylor, LLP,  and all of its partners; <br><br> Deborah Klar, individually and as a partner in the Liner Law firm; <br> Teri Pham, individually and as a partner in the Liner Law Firm. <br><br> Defendants. | CASE NO.: 3:09-cv-00422-ECR-VPC <br><br> **RESPONSE OF MICHAEL FLYNN  TO MOTIONS** <br> **TO STAY FILED BY THE  LINER LAW  FIRM; AND BY THE KLAR / PHAM DEFENDANTS** |

**INTRODUCTION**

Plaintiff respectfully responds as follows to the "Motion to Stay Discovery" filed by the Liner law firm. Plaintiff suspects that the motions to stay have been filed because of the contents of his Rule 26 (a) (1) "Initial Disclosures", particularly relating to the Klar computers seized by the Liner law firm when it terminated her; and rapidly emerging facts involving the defendants' former clients, Edra Blixseth and Dennis Montgomery, which facts establish the liability of the defendants in this case.  Nevertheless, IF the Court desires to have its calendaring and scheduling protocols modified by the defendants, plaintiff will

1  agree to a 45 day stay of discovery, but not a stay as to Rule 26 compliance,  subject to the following
2  requests:
3        (a)   The Court order  that the Spoliation Order entered in the underlying case, No 3:06-cv-00056
4  (PMP-VPC) at doc. # 962 , be made an order in this case.  That Order was based on the motion of plaintiff,
5  Michael Flynn, (doc.# 860) in the underlying case of *eTreppid v Montgomery,* 3:06-cv-00056 (PMP-VPC),
6  (hereinafter, the "Underlying Case".)
7        (b) The Court specifically include in said spoliation order in this case that all computers seized by the
8  Liner firm from defendants Klar or Pham, and all of its computer contents relating to this matter  be
9  preserved in their original seized and / or present condition; and that the Liner firm file an affidavit stating
10 that no alteration, destruction, deletion or changes in the contents of the seized computers has been made
11 since the date of their seizure, which Plaintiff believes took place in July-August, 2008.  If the defendants
12 oppose this request in their Reply, and / or the Court is inclined to grant the stay, but requires the filing of a
13 motion, Plaintiff respectfully requests leave of court to do so.
14       (c)   The Court order that  the Liner firm  fully comply with Rule 26 (a) (1) by stating in a
15 supplemental Rule 26 (a) (1) filing  that it possesses said computers seized from Ms. Klar or Ms. Pham; and
16 / or that the computers have been returned but copies of the hard drives have been made; and that it identify
17 the "categories of documents"  contained on said computers as required by Rule 26.
18       (d)  The Court order the Klar and Pham defendants to comply with Rule 26 (a) (1) after the Rule 26
19 (f) meeting, which plaintiff does not believe should be stayed for any period.

### SUMMARY OF GROUNDS FOR ABOVE REQUESTS

21       The grounds for Plaintiff's agreement to a 45 day stay and his foregoing requests are:
22 (1) Motions to stay while motions to dismiss are pending are disfavored; but in the unique circumstances of
23 this case, *i.e. "a case within a case,"* while the "Objections" to the Sanctions Order are pending, a short
24 stay, subject to the protection of potentially dispositive evidence contained within the aforesaid computers,
25 is warranted;
26 (2) The likelihood  of dismissal or striking of pleadings, particularly without leave to amend given the
27 factual findings in the Sanctions Order, is so remote as to border on  frivolous. Likewise, defendants'
28

- 1 -

1  assertions that there are no "factual issues" requiring discovery, particularly after they have had the benefit
2  of reading plaintiff's Rule 26 disclosures, is frivolous;
3  (3) The Klar and Pham defendants should not evade present and past due Rule 26 compliance with a stay of
4  discovery, *after* plaintiff has complied; *and where they actually rely upon plaintiff's compliance to make*
5  *additional frivolous arguments in their stay motion*;
6  (4) Factual developments in related bankruptcy proceedings of Edra Blixseth and Dennis Montgomery,
7  both of whom have made claims against the Liner firm, are establishing the defendants' collective
8  misconduct, which underlies plaintiff's claims. Specifically, said facts relate to the
9  Blixseth/Montgomery/Liner fraud on the court, fraud on the government, and retaliation against plaintiff
10 giving rise to his claims for attempting to perform his Nevada Rules of Professional Conduct 3.3 obligations
11 because he discovered said frauds. In connection with the computer hacking claims, plaintiff has discovered
12 how Montgomery and Blixseth have hacked into plaintiff's computers; and perpetrated their frauds in
13 connection with the purported decoding of al Qaida transmissions on al Jazeera in shocking disregard for
14 the safety of this country. Defendants' efforts to conceal this fraud by attempting to "crush Mr. Flynn into
15 submission" has caused substantial financial and physical injury to the plaintiff. Thus, a short stay as those
16 facts unfold may conserve judicial resources if evidence in the possession of Liner, Pham and Klar is
17 otherwise preserved.
18 (5) This is a case where the wheels of justice have been grinding very slowly, but they need to grind
19 *exceedingly fine* because of the societal interests at stake, the intentional interference and obstruction of the
20 administration of justice, and the underlying rapidly emerging and shocking conduct by which the defendants
21 and their clients attempted to take advantage of the war on terror for monetary gain, all of which has
22 resulted in severe financial *and* physical damage to the plaintiff, as well as to our country.[1]

## ARGUMENT

1. Rule 26 (a) (1) requiring "Initial Disclosures," and LR 26-1 are designed to assist *the* Court in regulating *its* calendar; and compel the parties to do their homework, research, analysis, and make

---

[1] In their motions to dismiss and to strike, defendant Liner blatantly continues to ignore the explicitly stated damages pleadings in the complaint, including physical injury.

1  "initial disclosures" on the claims and defenses *before discovery begins*.   Indeed, Rule 26 (d) prohibits
2  discovery until the Rule 26 (f) meeting; but initial disclosures are required within ten days after the Rule 26
3  (f) meeting. LR 26-1 requires compliance with Rule 26  by scheduling the Rule 26 (f) meeting "within thirty
4  (30) days after the first defendant answers or otherwise appears." Compliance with Rule 26 (a) (1)  initial
5  disclosures and the Rule 26 (f)  meeting  places the burden on counsel to save court time and resources. It is
6  designed to make the parties fulfill their Rule 11 obligations  – NOT burden the Court with counsel's lack of
7  up-front preparation in prosecuting or defending a case before discovery actually commences.  Thus, all of
8  the defendants should be made to fully comply with Rule 26.  Just the "meeting" and the "discovery plan"
9  required by both Rule 26 and LR 26-1 should illuminate the court as to the lack of merit in the motions to
10 dismiss.  Perhaps that is another reason, defendants do NOT want to comply with the rules.

11            2.         The Liner firm has only partially complied with Rule 26 (a) (1) by making very
12 abbreviated "initial disclosures" which are plainly incomplete on their face given their prior admissions in the
13 underlying case that they have possession of the e-mails between plaintiff and Montgomery and Blixseth;
14 and they have possession of *their* e-mails between them and Montgomery and Blixseth, and third parties,
15 such as the banks they helped procure loans from on behalf of Blixseth to pay Montgomery, which financed
16 the entire scheme pursuant to "circuitous funding".  Discovery of the "circuitous funding"  scheme was part
17 of plaintiff's Rule 3.3  withdrawal as evidenced in emails on file in the underlying case, (doc. # 277 - 286).
18 As now discovered, the "circuitous funding"  includes overt fraud by the Liner firm to procure fraudulent
19 loans to finance the technology fraud on the government, as recited below.

20            The computers referenced above  have not been identified under Rule 26, nor where they are
21 maintained, nor the categories of documents on them.  For example, the computers seized by the Liner firm
22 from Ms. Klar and perhaps from Ms. Pham, have not been identified, nor the categories of documents
23 contained on said computers.  Additionally,  defendant, Ms. Pham  is suing the Liner firm in Los Angeles for
24 firing her and withholding  her "partnership draw" until she left; and for not defending her in connection
25 with the sanctions motion.  Any documents reflecting admissions by the Liner that Ms. Pham had engaged in
26 misconduct on which basis they withheld her partnership salary draw and refused to defend her should be
27 identified in their  "Initial disclosures."

28

3. The Liner firm seeks a stay of discovery because its motions to dismiss and to strike are pending; and because its "Objections" (doc.# 1035) to the Sanctions Order (doc.# 985 ) are pending before the Hon. Judge Pro in the underlying case.  Although the Liner motions to dismiss are clearly frivolous, given the Sanctions Order and its underlying findings of fact, and particularly regarding perjury and the plainly pleaded damages allegations, this case does  involve unique features arising, in part, out of the Sanctions Order.  One of them is that although plaintiff is a lawyer, indeed, plaintiff was severely damaged by their outrageous conduct both financially and physically.  Defendants choose to simply ignore the physical injury allegations in the complaint.

Additionally, plaintiff's Rule 3.3 obligations in the underlying case lie at the heart of this case, thereby making it a case-within-a-case.  This is becoming increasingly evident and important as the defendants' schemes unravel, revealing misconduct that goes far beyond what plaintiff knew when he originally withdrew as counsel for Montgomery, by the filing of plaintiff's sealed Rule 3.3 declaration in July, 2007.  Plaintiff's obligation to withdraw in June, 2007, and to  confront and inform the tribunal of what he did know at that time in the underlying case (which can be fairly characterized now as  massive and shocking fraud on the court and the United States)  is the foundation for plaintiff's present claims against defendants here.

It is now becoming clear why defendants tried to "crush Mr. Flynn into submission;" and resorted to a $43 million dollar fraudulent lending scheme to finance their technology scam, the cover-up and the involvement of defendants. They are all inextricably linked to the plaintiff's injuries and damage.   Based on recently discovered evidence, neither the Court in the underlying case, nor this  Court have been apprised, nor has it been pleaded yet in this case, exactly *how* Montgomery and Blixseth accomplished  this massive fraud. Plaintiff has recently discovered *how* they used the ruse of "noise filtering technology"  by means of massive computer hacking and off shore web-sites to implement their scheme.   The scheme included the insertion of purported "security threats" by Montgomery  into web-sites which he knew that government intelligence  agencies were monitoring; and the prior delivery of the "threats" to the intelligence agencies based on his purported "noise filtering" of al Qaida threats on al Jazeera. In truth, as has now been publically exposed,  there never were any al Qaida encoded messages on al Jazeera satellite TV transmissions.

- 4 -

1  Montgomery simply contrived this science fiction story, and Edra Blixseth knew he was doing it, for their
2  personal financial gain.
3       Their conduct was in fact exponentially more dangerous to the United States and its citizens than has
4  been revealed.  Plaintiff does not know *exactly* why the government has chosen to adopt the state secrets
5  privilege in the manner it has; BUT if any of what Montgomery represented to Plaintiff is true, an
6  understanding of how Montgomery duped the government is relevant, and makes the consequences of
7  Montgomery's, Edra Blixseth's and Klar's conduct far more egregious than what has been disclosed to the
8  Court in the underlying cases. In turn, such conduct made plaintiff's Rule 3.3 duties in the underlying case
9  exponentially more significant, which, in turn, provides the motive and proximate cause for the defendants'
10 desperate tactics in attacking plaintiff and vowing to "crush him."  The witnesses in Nevada in the
11 underlying case are now even more directly relevant to plaintiff's claims; <u>and *this Court's* application of the
12 protective order, as opposed to a court unfamiliar with the underlying case, is even more important.</u>
13      4.     In this case, none of the reasons advanced by defendants meet their "heavy burden"
14 of making a strong showing to establish why discovery should be stayed. <u>Turner Broadcasting Sys. Inc., v</u>
15 <u>Tracinda Corp.</u>, 175 F.R.D. 554, 556 (D. Nev.1997).  Indeed, their primary argument relating to the
16 pending motions to dismiss borders on the frivolous.  Just the computer hacking claims alone require
17 "factual" discovery.  The production of the Klar and Pham computers and a forensic examination of them
18 alone will provide directly relevant evidence on every "factual" claim in the complaint, particularly the
19 computer hacking claims.  For that reason alone, it is plain why defendants' have moved to prevent this
20 vital discovery from taking place.
21      Also, unlike <u>Jarvis v. Regan</u>, 833 F.2d 149 (9th Cir. 1987), here there are specific "factual issues" as
22 cited above just in connection with computer discovery which need to be resolved. Plainly, depositions of
23 the Nevada witnesses to prove the underlying fraud, the computer hacking, and the perjuries of
24 Montgomery giving rise to the plaintiff's Rule 3.3 duties are needed. Additionally, for the efficient and
25 proper administration of justice, for this court's understanding of what has transpired in these cases, for the
26 final decision-making on the Sanctions Order", for the American citizenry to know how individuals like
27 Montgomery and Edra Blixseth could hoodwink our intelligence agencies ( and which may explain how the
28

1 recent "underwear bomber's" threats were apparently disregarded or viewed as another "crying wolf"
2 episode with so many other false threats such as those of defendants Montgomery and Edra Blixseth), it is
3 imperative that this Court understand the "factual issues" in order to resolve *this case.*

4       5.     Likewise, defendant Liner's damages arguments in the present motion extracted
5 from its motion to strike are so frivolous as to question whether they read the complaint, either in
6 connection with physical injury or financial damage. Aside from ignoring specifically pleaded facts to make
7 their arguments, defendants misstate or misunderstand the facts that they argue. Plaintiff's monetary
8 damages arise from defendants' malicious scheme to deprive plaintiff of his fees and costs *regardless of*
9 *whether they are reflected in the judgment against Montgomery.* The incurred fees and costs relating to
10 the $630,000 *pre-date the judgment by more than a year.* It was owed by both of their clients. *They* then
11 engaged in the pleaded malicious and abusive scheme <u>with their clients</u>, including perjury, to proximately
12 cause the non-payment of the fees and costs. As discovery will prove, and as pleaded in the Complaint in a
13 "short and plain statement of the claim" as required by Rule 8 (a), plaintiff expects that discovery will
14 quickly illuminate the "factual issues" relating to his damages.

15       6.     The Klar / Pham arguments in their motion to stay regarding pending "dispositive "
16 motions *after* they had the benefit of reading plaintiff's Rule 26 (a) (1) disclosures, reveal their motive for
17 filing this motion. Unless they somehow convince this court to "rush to judgment" and bar discovery on
18 plainly well-plead claims, they undoubtedly realize that just the production of the seized Klar computers
19 alone will collapse all of their contrived defenses. They also know from discovery that has been revealed in
20 the last several weeks in the bankruptcy matters, that hundreds of documents relating to their role in the
21 financial and technical frauds, as well as their involvement in violating this court's orders in the underlying
22 case, will now be produced for this court's examination in this case, either from other sources or from the
23 Klar computers. Defendants' "dispositive motions" re-arguments should be disregarded.

24       7.     Defendants' re-argument of their computer hacking claims also reveals desperation.
25 They now know plaintiff has recently acquired evidence and documents relating to these claims. The
26 evidence implicates them and their clients. Thus, they now wish to shut off that "factual" discovery. Unless
27 Klar's computers seized by Liner have been altered, Ms. Klar knows that the damning evidence of unlawful
28

computer hacking is on her computers. Perhaps that is why Liner filed its motion after Klar. A spoliation order in this case may prevent further spoliation IF any has occurred.

8.	Defendants' re-argument of subject matter jurisdiction and venue, pointing to a voting registration of plaintiff in Rancho Santa Fe, and his Rule 26 compliance is frivolous. Plaintiff is registered to vote in Massachusetts. There are three Michael Flynn's in Rancho Santa Fe, *all unrelated*. Plaintiff is uncertain to which registration defendants make reference. Plaintiff did register a decade ago for the presidential elections when he was litigating the case referenced in the Central District. Plaintiff recalls only voting once in California, in his entire adult life either in the 2000 or 2004 presidential election.

The issues of the state secrets and protective order alone provide compelling reasons for this court to retain both venue and jurisdiction. The Nevada witnesses recited in the plaintiff's Rule 26 disclosures require Nevada jurisdiction and venue, as does plaintiff's domicile in Massachusetts. The federal claims mandate Nevada jurisdiction and venue, particularly given the state secrets issues which are intertwined with the claimed issues of defendants' computer-hacking misconduct.

## **CONCLUSION**

IF the Court desires to modify the established rules relating to the commencement of discovery *following* the Rule 26 (f) "meeting"; and subject to the "Requests" recited herein, the plaintiff will agree to a 45 day stay following the Rule 26 (f) meeting and the submission of a discovery plan pursuant to LR 26-1.

Respectfully Submitted,

Dated: January 8, 2010

/s/
Ronald Logar, Peter Neumann,
 Attorneys for Michael Flynn
Michael Flynn (pro se)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing RESPONSE OF MICHAEL FLYNN TO MOTIONS TO STAY FILED BY THE LINER LAW FIRM; AND BY THE KLAR / PHAM DEFENDANTS was filed electronically via CM/ECF in the United States District Court for the District of Nevada, with notice of same being electronically served by the Court on all of the attorneys of record registered with the CM/ECF system this 8th day of January, 2010.

/s/
ZACHARY DRAPER
Legal Assistant to Logar Pulver
