Ronald J. Logar, Nevada State Bar No. 00303
Eric A. Pulver, Nevada State Bar No. 07874
LOGAR PULVER
1875 Plumas Street, Suite 1
Reno, NV 89509
Tel.: 775 786 5040
Fax: 775 786 7544
E-mail: eric@logarpulver.com

Peter Chase Neumann, Nevada Bar No. 00636
136 Ridge Street
Reno, NV 89501
Tel.: 775 786 3750
Fax: 775 786 8791
E-mail: petercneumann@sbcglobal.net

Attorneys for Plaintiff, Michael J. Flynn, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL J. FLYNN,<br><br>Plaintiff<br><br>vs.<br><br>LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP, DEBORAH A. KLAR, and TERI PHAM,<br><br>Defendants | 3:09-CV-00422-PMP-RAM<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, MICHAEL J. FLYNN, by and through his counsel of record, as and for causes of action against Defendants, and alleges as follows:

////////////

/////////

/////

///

**1.     JURISDICTION AND VENUE**

1.     The Court has jurisdiction pursuant to 28 U.S.C. §1332 (diversity); and 18 U.S.C. § 1030 (computer hacking);18 U.S.C. § 2707 (violations Electronic Communication Privacy Act), 18 U.S.C. §§ 1962, 1964 (RICO) and over the state law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).  Venue is proper pursuant to 28 U.S.C. §1441(b).  Jurisdiction and venue are proper in this Court because this Amended Complaint is related to the subject matter of four actions now or previously pending in this court, involving the same parties, and arising out of the same transactions and events.

**2.     PARTIES**

2.     Plaintiff Michael J. Flynn, Esq., is and at all times mentioned in this complaint a Massachusetts licensed attorney practicing law since 1970, who appeared pro hac vice in the State of Nevada in the Nevada cases recited herein.  He is domiciled in the Commonwealth of Massachusetts.

3.     Defendant, Liner, Grode, Stein, Yankelevitz, Sunshine, Regenstreif & Taylor, LLP , (the "Liner firm") is a Los Angeles based law firm with offices at 1100 Glendon Ave., Los Angeles, California, 90024-3503.  It previously represented Edra Blixseth; and Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust, ("the Montgomery Parties").

4.     Defendants Deborah Klar and Teri Pham are attorneys and former partners in the Liner firm, who previously represented the Montgomery parties and Edra Blixseth in multiple matters.  They are licensed to practice law in California and appeared pro hac vice in Nevada on behalf of the Montgomery parties and Edra Blixseth in Nevada in the case of Dennis Montgomery v. eTreppid Tecgnologies. United States District Court, District of Nevada, Civil Case No. 3:06-cv-00056.  They are domiciled in California.

5.     Plaintiffs do not know the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said Defendants under such fictitious names. Plaintiffs are informed and believe that such fictitious Defendants are responsible in some manner for the events and happenings herein referred to, and proximately caused the damage to Plaintiffs

as herein alleged. Plaintiffs will seek leave to amend this Amended Complaint to allege their true names and capacities when the same have been ascertained.

6. At all times herein, Defendants, acted as the agents and partners of each other, and as the agents and representatives of Edra Blixseth and Dennis Montgomery, and as the agents and partners of the Liner firm. At all times referred to herein, Defendants, and each of them, were the agents, consultants, co-venturers, or in some manner agents or principals, or both for each other and were acting at all times alleged herein within the course and scope of their agency.

**3.  FACTUAL BACKGROUND**

7. On or about June - July of 2007, Defendants Pham and Klar, while employed as attorneys at the Liner firm, were retained to provide legal services for the Montgomery Parties in connection with litigation pending in the U.S. District Court for the District of Nevada in Case No. 3:06-CV-0056 (consolidated) ("Nevada Litigation"). On or about February - March, 2007, Klar and the Liner firm were also representing Edra Blixseth, Montgomery's partner, co-conspirator, and joint tortfeasor in the commission of torts against the Plaintiff. Plaintiff had previously represented the Montgomery Parties in this litigation but withdrew as counsel when Plaintiff discovered that the Montgomery Parties, and Edra Blixseth, were engaged in criminal and fraudulent conduct for which Dennis Montgomery was attempting to use Plaintiff's legal services to perpetuate his and Edra Blixseth's frauds on the U.S. government and on this Court.

8. For example, on April 13, 2007, Dennis Montgomery told Plaintiff that he was hacking into the computers and emails of third parties on behalf of Edra Blixseth while Plaintiff was representing him. Further, Plaintiff discovered that the software that was the subject of the Nevada Litigation, and which Montgomery and Edra Blixseth were asserting ownership of in the Nevada Litigation, more specifically the "noise filtering" software to decode terrorist threats, was a complete fraud. It did not exist. The purported software which Dennis Montgomery and Edra Blixseth represented could be used to detect secret terrorist communications and could identify terrorists and their weapons from satellites and airplanes was being used by them in a fraudulent scheme to defraud the U.S. government, foreign governments, and private individuals. Until Edra Blixseth terminated him on or about March 26, 2007, Michael Sandoval was a co-conspirator in

said frauds.

9.    When Plaintiff withdrew as counsel for the Montgomery Parties and sought to recover attorneys' fees owed to him by the Montgomery Parties, Defendants willfully filed a complaint in the Los Angeles Superior Court in bad faith and with malice seeking injunctive relief based on knowingly false allegations relating to plaintiff's license to practice law in Massachusetts and his pro hac vice representation of the Montgomery parties in Nevada cases with the ulterior purpose of circumventing Nevada law and Nevada court orders with respect to plaintiff's "retaining lien" over the Montgomery "client files"; and attempting to circumvent the state secrets privilege and court orders requiring that plaintiff's files remain subject to Nevada Federal Court jurisdiction; and attempting to defeat plaintiff's legal fees and costs due and payable under Nevada law; and seeking to coerce plaintiff to drop his claim for fees and costs through threats and intimidation based on false and fraudulent allegations in the complaint with respect to plaintiff's alleged holding himself out as having a California law license; and for the purpose of countering specific negative publicity relating to Montgomery's alleged fabrication of emails relating to the bribery of Nevada's Governor, thereby shifting the spotlight to plaintiff while falsely claiming that plaintiff had lied to defendant about his California law license; and for the ulterior, bad faith and improper purpose of intimidating, outspending, and frivolously suing plaintiff; and for the improper purpose of perpetuating the receipt and use of fraudulently procured investment monies from a third party, by their other client Edra Blixseth and her agents for the purpose of preserving the ongoing fraudulent operation of Opspring LLC and Blxware LLC; and as part of their attack strategy to harass and intimidate the plaintiff.

10.   Because Plaintiff had previously represented Montgomery, and thereby represented a threat to expose their fraudulent scheme to defraud the U.S. Government, Montgomery and Edra Blixseth conspired to obtain by illegal means, including computer hacking, the communications of Plaintiff via email, for the purpose of hindering, obstructing and defeating Plaintiff's legal rights and obligations under the Nevada Rules of Professional Conduct, specifically Rule 3.3, and to defeat Plaintiff's recovery in Nevada of fees owed to him. The Liner Firm, Deborah Klar and Teri Pham served both Montgomery and Edra Blixseth as their

lawyers and recipients of the "hacked" information and the instruments to attack, obstruct, and defeat Plaintiff's legal rights and obligations by illegal and improper means.

11. Defendants willfully filed two applications for a "writ of possession" in the Los Angeles case in bad faith and with malice for the ulterior and improper purpose of circumventing Nevada law and Nevada court orders with respect to plaintiff's "retaining lien;" and circumventing the state secrets privilege; and seeking to defeat plaintiff's claims for legal fees and costs; and based on the perjured declaration of Montgomery that plaintiff "held himself out as a California lawyer" which Montgomery allegedly didn't discover until he hired defendants. The timing and the basis for the filing of these pleadings derived from "hacked" information.

12. Defendants willfully filed a perjured declaration of Montgomery dated September 10, 2007 in the Los Angeles Superior Court case and in the Nevada cases in bad faith, and with malice and for the ulterior and improper purpose of defeating Nevada jurisdiction and obtaining California jurisdiction and venue in order to defeat plaintiff's fee and costs incurred solely in the Nevada cases; and for the purpose of circumventing the state secrets privilege; and for the purpose of avoiding posting of a bond explicitly mandated by the Nevada Court's October 12, 2007 Order. The timing and the basis for the filing of these pleadings and the perjured declarations derived from "hacked" information.

13. Defendants willfully filed a San Diego Fee Arbitration Petition in bad faith and with malice , and for the ulterior and improper purpose of defeating Nevada jurisdiction based on the perjured declaration, circumventing Nevada Court Orders, and to defraud plaintiff of his fees and costs. The timing and the basis for the filing of this Petition derived from "hacked" information.

14. Defendants willfully filed a complaint with the Massachusetts Board of Bar Overseers with malice and in bad faith, and for the improper purpose of defeating Nevada jurisdiction based on the perjured declaration, circumventing Nevada Court Orders, and to defraud plaintiff of his fees and costs. The timing for the filing of this complaint derived from "hacked" information as part of the larger scheme to intimidate Plaintiff.

15. Defendants in collaboration with Montgomery willfully prepared, fabricated and

-4-

FIRST AMENDED COMPLAINT

filed, both in Nevada and California, the September 10, 2007 perjured declaration of Montgomery knowing that every pleading filed in Nevada available on-line bore on its face that plaintiff is licensed in Massachusetts; that plaintiff's stationary stated on its face that plaintiff was "Only Admitted in Massachusetts;" that they possessed, and local counsel possessed transcripts, documents and testimony that plaintiff only represented himself to be a Massachusetts lawyer, and that even the most cursory of any investigation and inquiry would have established the falsity of their fabricated declaration.  They have utilized the perjured declaration in multiple filings in order to harass and intimidate plaintiff as part of their attack strategy.  Defendants filed the perjured declaration as part of a larger scheme derived from "hacked" information to intimidate Plaintiff and defeat his legal rights and obligations.

16.     Defendants individually and collectively, and acting as the agents of each other, engaged in the foregoing "willful acts" with malice and the specific intent to lie to, and perpetrate a fraud on the courts in California and Nevada; and for the improper purposes and ulterior motive, and by unlawful means, of defrauding plaintiff of his fees and costs in the sum of approximately $630, 0000.  Defendants acted collectively using the Liner firm's resources and fees obtained from fraudulent billing for bad faith litigation strategies, and pursuant to its policies. They did so for the improper purpose of obtaining jurisdiction and venue in California in order to defeat plaintiff's rights under Nevada law and applicable court orders; in order to defeat and circumvent the state secrets privilege and as part of their attack strategy designed to harass and intimidate plaintiff.  In its October 12, 2007 Order, the Nevada District Court explicitly ruled that seeking the "client files in the California law suit was directly "contrary" to Nevada court orders.

17.     The timing and the contents of the filings of the Defendants, coupled with Montgomery's admissions of computer hacking, coupled with Plaintiff's observed facts regarding the hacking, coupled with his disclosures to the Defendants, coupled with their subsequent reliance on Montgomery and use of "hacked" information, given to them by both Edra Blixseth and Montgomery, supports their actual knowledge of the use of "hacked" information; or use of information that they knew or reasonably should have known was obtained by Montgomery and Edra Blixseth by illegal means, including computer hacking.

18. Defendants employed a fraudulent financing scheme in collusion with Montgomery and Edra Blixseth in order to finance the perpetration of their torts against the Plaintiff and to pay themselves legal fees derived from the fraudulent financing scheme. They participated in the procurement of fraudulent loans from Western Capital Partners for $13 million, from Wachovia Bank for $8 million, from Stockman Bank for $4.6 million, from American Bank for $9.5 million; and from First Bank & Trust for $10 million. These loans were all procured by means of overtly fraudulent financial statements and fraudulent loan applications prepared in whole or in part by Defendants. Without the procurement of said fraudulent loans totaling approximately $50 million in collaboration with Edra Blixseth and Montgomery – using fraudulent representations relating to the fraudulent technology – Defendants would not have been able to perpetrate their frauds against the Plaintff. In addition, millions of dollars of these funds were paid by Edra Blixseth to Montgomery, some of which was used to purchase computer equipment used in the computer hacking scheme.

**First Cause of Action - Aiding and Abetting Violations of 18 U.S.C. § 1030**

**(Against All Defendants)**

19. Plaintiff re-alleges each allegation contained within the above paragraphs.

20. Pursuant to 18 U.S.C. § 1030(g) plaintiff has a civil cause of action against defendants for aiding and abetting Montgomery's "hacking" into plaintiff's computers, disclosing the information to the defendants; and the defendants' subsequent use of said information in the perpetration of their other torts. Defendants together with Montgomery knowingly accessed plaintiff's computers and obtained information without authorization for the purpose of gaining an advantage in existing litigation involving the attorney's fees, including their knowing and collective intent to defraud plaintiff of his legal fees by knowingly using information unlawfully obtained from accessing plaintiff's computers without authorization; and knowingly using information gained through said illegal access in the pursuit of their scheme to harass and intimidate the plaintiff and crush him into submission.

21. Specifically, on April 13, 3007, Dennis Montgomery told Plaintiff that on numerous prior occasions that he was hacking into the computers of Timothy L. Blixseth and had

-6-

FIRST AMENDED COMPLAINT

purportedly discovered as a result of this hacking that Mr. Blixseth had transferred "7 million dollars" to an offshore bank account held by a foreign bank in the Cayman Islands for the purpose of concealing assets from Ms. Blixseth and her attorneys as they resolved issues concerning the Blixseths' division of their marital community assets in relation to the Blixseths' then pending divorce proceedings.

22. Montgomery obtained this purported information on behalf of Ms. Blixseth and her attorney, including Deborah Klar, who at that time was preparing pleadings and affidavits as part of a separate law suit connected to the Blixseth divorce proceedings. The collaborative use of this allegedly "hacked" information by the Defendants and Edra Blixseth's attorneys is evidenced by the fact that Ms. Blixseth's divorce attorneys on June 15, 2007 sent a letter to Mr. Blixseth's attorneys inquiring about his "recent offshore banking activity in the Cayman Islands . . . ." Edra Blixseth and Montgomery both disclosed to Deborah Klar that the information was obtained by Montgomery "through Dennis' computer skills."

23. Between January 2007 and April of 2007, Montgomery gave Plaintiff information that Montgomery represented came from a U.S. intelligence agency based on phone calls Montgomery was purportedly receiving from an "intelligence operative" using a 000 000 0000 phone number, which Montgomery said he was at time confirming through a computer located at George Washington University and which was operated and controlled by a U.S. intelligence agency. Montgomery's statements to Plaintiff were designed to mislead Plaintiff into believing that a specific intelligence agency was cooperating with him against the Trepp parties when in retrospective fact, Montgomery was hacking into computers. Montgomery first led Plaintiff to believe that Montgomery obtained this information by receiving phone calls from an individual inside a specific intelligence agency who was supporting Montgomery's purported interception of terrorist threats and working with him to convey the technology to the government without interference from the Trepp parties.

24. Yet, on and after April 13, 2010, after this Court unsealed the FBI reports on April 9, 2007, Montgomery disclosed that he was actually receiving this information through intercepting, with the aid of a separate intelligence operative, information into in the computer

-7-

FIRST AMENDED COMPLAINT

located at George Washington University.

25.     After Montgomery disclosed the computer hacking on April 13, 2007, and for the ensuing 60 days, Montgomery's conflicts with Plaintiff intensified over multiple matters including Montgomery's computer hacking with the alleged assistance of an "intelligence operative", the validity of his purported technology for which he was seeking Plaintiff's legal services to defend, his statements in previous declarations Montgomery had executed, and the non-payment of Plaintiff's fees and costs.  As this conflict escalated, plaintiff became increasingly suspicious of Montgomery's veracity, and began noticing strange operations on Plaintiff's computer including the movement of his cursor, particularly early in the morning when his computers were not being used.  When Plaintiff notified Montgomery that he was withdrawing from representing him in June, 2007, Plaintiff began observing the involuntary backspacing of letters and words that he was then typing on his computer relating to Montgomery.  Until recently, these backspacing incidents occurred on numerous occasions when Plaintiff was preparing documents or emails relating to Montgomery or Edra Blixseth.

26.     On April, 9, 2007, the Nevada District Court unsealed certain FBI reports relating to Montgomery which Plaintiff then discussed with Montgomery and Edra Blixseth resulting in meetings at Porcupine Creek on April 12 – 13, 2007.  Montgomery told Plaintiff between April 13, 2007 and May 30, 2007 that Edra Blixseth had previously requested Montgomery to "monitor" the computers of her business partner, Michael Sandoval, to learn information about him and his business dealings; and Montgomery had further told Plaintiff that Michael Sandoval had made a similar request of Montgomery to "monitor" the computers of Edra Blixseth.  In late May, 2007, Montgomery stated that he was removing all of his purported technology and all of his electronically stored  intercepted information from the premises of Opspring LLC in Bellevue, Washington.  During this period, Montgomery told Plaintiff that Sandoval had possession of "thousands" of Edra Blixseth's emails which he had "intercepted" for Sandoval; and that Edra Blixseth had possession of the "entire contents of Sandoval's hard drives".  When Plaintiff asked Montgomery on several occasions between April 13, 2007 and mid May, 2007 what "monitoring" meant, Montgomery generally retorted "what the f… do you think it means!"

-8-

FIRST AMENDED COMPLAINT

27. Beginning in June – July, 2007, Defendants, and each of them, began representing the Montgomery Parties in the Nevada cases after having previously represented Edra Blixseth since March, 2007 and having access to her information derived from Montgomery's computer hacking. During this time, Dennis Montgomery continued his pattern of hacking into the computers of Plaintiff as evidenced by Plaintiff's observations relating to the movements of his cursor and the backspacing discussed above, and as evidenced by numerous incidents where Plaintiff would be conveying information via his computers and then strange incidents would occur. In late July of 2007, Plaintiff informed Defendants through Teri Pham that Montgomery was hacking into computers for Edra Blixseth including his own computers; and that Montgomery had possession of all Plaintiff's electronically stored information and emails. Later, in August, 2007, Deborah Klar admitted to this Court that she had access or possession of Montgomery's electronically stored information, which Plaintiff believes includes information obtained by Montgomery from Plaintiff's computers through computer hacking. Later, in August – September, 2009, after Montgomery filed bankruptcy, Montgomery stated in bankruptcy proceedings that the Liner firm had possession of *all* of his electronically stored information.

28. Defendants, and each of them, knowing that Dennis Montgomery was gaining information against his adversaries including Plaintiff, from hacking into their computers, nevertheless used this wrongfully gained information in their litigation efforts against Plaintiff.

29. Specifically, in numerous pleadings filed with this Court and in California in or around August – September, 2007, the Defendants represented that Plaintiff possessed the Montgomery Parties' "client files" within California. Defendants' factual basis for these representations in their pleadings concerning the location of the Montgomery Parties' client files could only have been provided to them from Montgomery as a result of Montgomery's unauthorized access ("hacking") into Plaintiff's computers and emails during the summer of 2007. In fact, said "client files" are located on Plaintiff's computers in California, Massachusetts, or wherever Plaintiff is located with his lap top. Plaintiff's paper client files were located in Massachusetts and some in California. Similarly, the Defendants filed pleadings that Plaintiff was allegedly communicating attorney client privileged information to third parties.

-9-
FIRST AMENDED COMPLAINT

30.     Defendants had no basis to make this allegation without receiving information from Montgomery derived from hacking into Plaintiff's computers and then altering the information in some manner.  Consistent with Montgomery's hacking practices, Montgomery would gain unauthorized access into a third person's computers and/or emails to gain certain source information and then alter that information for his own purposes and to use against his adversaries.  For example, Montgomery engaged in this hacking and manipulation in the Nevada Litigation when he fabricated the "Gibbons' emails" wherein Montgomery obtained unauthorized access into the emails of third parties and then manipulated those emails in a manner that portrayed Warren Trepp bribing Jim Gibbons.  Montgomery gained unauthorized access into thid party computers to create what purported to be a federal grand jury target letter sent to Timothy L. Blixseth but was in fact a fraudulent target letter but which was given to Deborah Klar to use in her representation of Edra Blixseth for the purpose of gaining an advantage over Tim Blixseth.

31.     At all times material to the allegations herein, Defendants' knew that Montgomery's modus operandi was to hack into computers, intercept emails and information, then alter emails and/or information  to fit into fabricated allegations against his adversaries.  Defendants used this information against Plaintiff with said knowledge and while knowing Montgomery was a pathological perjurer.  <u>On this basis, and pursuant to this scheme, Defendants filed Montgomery's perjured declaration in California and Nevada.</u>

32.     Defendants knew that Montgomery was hacking into the computers of his adversaries and that such hacking was the source of the factual information that he was providing to them for their use in pleadings filed against Plaintiff, and/or being used in their work product to develop their scheme of harassment and intimidation against Plaintiff.  As Defendants Pham and Klar were the individual attorneys of record for the Montgomery Parties during this time period and were the attorneys whose names appeared on pleadings filed with this Court and in California against Plaintiff, they were specifically responsible for using the information provided to them by Montgomery which they knew, or had reason to know, he obtained from hacking into Plaintiff's computers.

33.     Plaintiff is informed and believes that throughout the litigation described above

-10-

FIRST AMENDED COMPLAINT

involving Montgomery and Defendants, Montgomery was continuing to hack into Plaintiff's emails and computers and was providing such information to Defendants, which Defendants knew was derived from Montgomery's hacking, for Defendants' use in filing and pleadings in this Court and in California against Plaintiff.

34. As a result of Montgomery's hacking into his computers and the ensuing stress suffered by Plaintiff as a result of Defendants using the information gained from that hacking against him in the litigation conduct described above, Plaintiff suffered from an extremely debilitating condition known as Shingles from the first week of October 2008 through December 2008. This physical injury suffered by Plaintiff was debilitating, painful and constitutes an injury for which he is entitled to compensatory relief in an amount to be proven at trial.

**Second Cause of Action: Aiding and Abetting Violations the Stored Communications Act, 18 U.S.C. § 2707**

**(Against All Defendants)**

35. Plaintiff re-alleges each allegation contained within the above paragraphs.

36. Based on the facts recited above, Defendants aided and abetted Dennis Montgomery in obtaining unauthorized access to Plaintiff's emails and stored data in violation of 18 U.S.C. §§ 2701 and are therefore liable to Plaintiff pursuant to 18 U.S.C. § 2702 for his damages suffered as a result, including, but not limited to, approximately $630,000 in attorneys' fees owed by the Montgomery parties, and plaintiff has incurred over $400,000 in fees and costs expended to defend against Defendants' outrageous litigation conduct described above, and for compensatory damages arising from Plaintiff's physical injury described above, and for punitive damages and attorneys' fees as allowed under 18 U.S.C. § 2707(c).

**Third Cause of Action: Aiding and Abetting Invasion of Privacy**

**(Against All Defendants)**

37. Plaintiff re-alleges each allegation contained within the above paragraphs.

38. Plaintiff had a reasonable expectation that his computers' contents and communications made through said computers would remain private and confidential. Defendants, using Montgomery's computer hacking methods as described above against him in

-11-

1   litigation in Nevada and California, violated and invaded Plaintiff's rights to privacy.

2   39.   As a proximate cause of the foregoing acts and misconduct recited in paragraphs 1
3   through 33 involving the violations of 18 U.S.C. § 1030 and 18 U.S.C. 2511 (interception of wire
4   and electronic communications), plaintiff has lost approximately $630,000 in attorneys' fees
5   owed by the Montgomery parties, and plaintiff has incurred over $400,000 in fees and costs
6   expended to defend against defendants' outrageous conduct;  plaintiff has also suffered injury to
7   his reputation, humiliation, embarrassment, mental suffering, inconvenience, anxiety, fears, and
8   mental and emotional distress which physically manifested itself in the form of Plaintiff suffering
9   from a debilitating flare up of shingles between October and December of 2008.

10   40.   Pursuant to this Count, Plaintiff demands compensatory and consequential
11   damages against all defendants; and punitive damages (Nev. Rev. Stat. 42.005) for oppression,
12   fraud and/or malice relating to their invasion of Plaintiff's privacy.

### Fourth Cause of Action: Violations of RICO Act (18 U.S.C. §§ 1962, 1964)
### (Against All Defendants)

15   41.   Plaintiff re-alleges each allegation contained within the above paragraphs.

16   42.   At all material times, the Defendants, and each of them, formed an "association-in-
17   fact" that constituted an enterprise which engaged in, and whose activities affected, interstate
18   commerce.  The enterprise is an entity separate and apart from the pattern of racketeering alleged.
19   The enterprise, included Dennis Montgomery, Edra D. Blixseth, Defendant Pham, Defendant
20   Klar, and the Liner firm, of which Defendant Pham and Defendant Klar were agents during this
21   time period.

22   43.   The purpose of the enterprise was to procure fraudulent loans from lenders in order
23   to secure monies to pay Defendants' legal fees in order to unlawfully harass and intimidate
24   Plaintiff in the manner described above; and to hack into Plaintiff's computers, and to obtain
25   contracts with the United States Government whereby Edra Blixseth and Dennis Montgomery,
26   through their entities, and while represented by Defendants, would obtain not less than $100
27   million from the U.S. Government in exchange for selling the Government the national security
28   related software described, which software was in fact fraudulent.

44. The predicate acts of the RICO enterprise consisted of the Defendants, and each of them, representing and actively participating with Edra Blixseth and Montgomery in obtaining loans from banks and private lenders based on fraudulent financial statements and representations for the purpose of obtaining funds so that Defendants could be paid to continue to harass and intimidate Plaintiff; and to pay Montgomery so that he could pay Defendants' legal fees; and to litigate in the Nevada Case the purported ownership of the fraudulent software so that Defendants could benefit from Edra Blixseth, through her entities, selling this purported software to the U.S. Government, which software was in fact fraudulent.

45. In particular, between March and June of 2008, Defendants represented Edra Blixseth and her entities in modifying a loan Ms. Blixseth owed to a Colorado private lender, Western Capital Partners LLC ("WCP"), so that Defendants could then arrange for Ms. Blixseth to borrow not less than $8 million from Wachovia Bank, N.A. to continue to fund the RICO enterprise. Specifically, between March of 2008 and June of 2008, Defendants represented Edra Blixseth in requesting that WCP release its security interest in Ms. Blixseth's ownership interest in Blxware LLC. This release of Ms. Blixseth's interest in Blxware LLC was necessary because Defendants had arranged for Wachovia Bank to lend Ms. Blixseth $8 million if Wachovia could obtain Ms. Blixseth's interest in Blxware LLC as collateral for the loan. During this process, Defendants represented to Wachovia Bank that Blxware LLC owned the fraudulent software described above (hereinafter "Software") and that Blxware had contracts valuing at least $100 million with the U.S. Government for the Government to use the Software for terrorist detection purposes. Defendants, however, intentionally concealed from Wachovia that the ownership status of the Software was being disputed in the Nevada Case, that the use and sale of the Software was subject to an injunction in the Nevada Case, and more importantly that the Software was fraudulent as it did not in fact detect terrorist threats. Defendants knew of these defects in the Software because Defendants were representing Edra Montgomery and Dennis Montgomery in the Nevada Case during this period, yet failed to disclose these facts to Wachovia, thereby perpetrating a fraud on Wachovia in connection with their representations to Wachovia. Defendants further perpetrated a fraud on Wachovia by misrepresenting to Wachovia that Edra

1  Blixseth was able to pay her bills as they came due and that Ms. Blixseth was not subject to any
2  threatened or pending litigation when in fact Defendants were concurrently representing Edra
3  Blixseth in Montana and California cases wherein Defendants prepared sworn statements on
4  behalf of Ms. Blixseth stating that Ms. Blixseth was unable to pay her bills as they came due, was
5  millions of dollars in arrears in taxes and other debts, and was generally insolvent.  Defendants
6  were actively involved in this lending fraud perpetrated on Wachovia because they brought
7  Wachovia to Ms. Blixseth for the purpose of  making the loan; and they had contacts with
8  Wachovia loan officers and initially arranged for Ms. Blixseth and Wachovia officials to discuss
9  the loan in the Defendants' offices then Defendants were actively involved in meetings between
10 Wachovia and Ms. Blixseth regarding the loan, made the above false representations to Wachovia
11 on behalf of Ms. Blixseth, and represented Ms. Blixseth in reviewing and revising loan closing
12 documents associated with the loan from Wachovia wherein affirmative representations were
13 made to Wachovia which Defendants knew to be false.  Defendants further provided false
14 financial statements to Wachovia during Wachovia's underwriting process.  The financial
15 statements were false because they ascribed values to the Software that was grossly inflated and
16 which failed to list a $13 million loan owed by Ms. Blixseth to WCP; and which concealed the
17 Nevada litigation and injunction.

18         46.    Defendants perpetrated this fraud on Wachovia to obtain money for the purpose of
19 funding their continued efforts to harass and intimidate Plaintiff, to prevent him from revealing
20 their frauds with respect to the Software, and to sell the fraudulent Software to the U.S.
21 Government for $100 million; and to pay Blixseth to pay Montgomery to hack into Plaintiff's
22 computers.

23         47.    Defendants committed additional frauds on other banks in the same manner by
24 providing other banks with false financial statements, making knowingly false representations
25 regarding Ms. Blixseth's solvency and her ability to pay her debts as they came due and her
26 litigation status.  The banks and lenders on which these additional frauds were perpetrated
27 include: American Bank in Montana for which Defendants helped procure loans totaling at least
28 $9.5 million in or around November and December of 2007; First Bank and Trust located in

1  Newport Beach California for which Defendants helped Ms. Blixseth procure loans totaling $10
2  million in March of 2008; CrossHarbor Capital Partners LLC located in Boston Massachusetts
3  from which Ms. Blixseth obtained a $35 million loan on August 13, 2008 and for which
4  Defendants provided CrossHarbor knowingly false financial statements; and Stockman Bank in
5  Montana for which Defendants helped Ms. Blixseth procure loans totaling $4.6 million in
6  September of 2008.

48.  In committing these predicate acts involved with their bank and lending fraud, Defendants did so from California while communicating through emails, phone lines and other interstate means of communications with banks and lenders in other states including attorneys for Wachovia located in New York, attorneys and principals for CrossHarbor in Boston, and banks in Montana and their representatives.

49.  The Defendants RICO predicate acts of obtaining funds for Ms. Blixseth based on fraudulent representations to lenders, and using information knowingly obtained through computer hacking was done for the purpose of harassing and intimidating Plaintiff and perpetuating their scheme to defraud the U.S. Government based on the fraudulent Software.

50.  The Defendants' RICO scheme has damaged Plaintiff in his business of practicing law as described above in an amount of not less than $1,030,000 associated with unpaid legal fees owed to him by Montgomery and his own litigation defense costs incurred as a result of Defendants' wrongful conduct for which Plaintiff is entitled to recovery, plus treble damages and attorneys' fees allowed under 18 U.S.C. 1964.

51.  Pursuant to 18 U.S.C. § 1962(d), Defendants, and each of them, both directly participated in the RICO scheme alleged about and conspired with Edra Blixseth, Dennis Montgomery, and themselves, to further the RICO scheme described above.

### Sixth Cause of Action: RICO Conspiracy (18 U.S.C. § 1962(d))

### (Against All Defendants)

52.  Plaintiff re-alleges each allegation contained within the above paragraphs.

53.  Pursuant to 18 U.S.C. § 1962(d), Defendants, and each of them, both directly participated in the RICO scheme alleged about and conspired with Edra Blixseth, Dennis

Montgomery, and themselves, to further the RICO scheme described above.

54. The Defendants' RICO conspiracy has damaged Plaintiff in his business of practicing law as described above in an amount of not less than $1,030,000 associated with unpaid legal fees owed to him by Montgomery and his own litigation defense costs incurred as a result of Defendants' wrongful conduct for which Plaintiff is entitled to recovery, plus treble damages and attorneys' fees allowed under 18 U.S.C. 1964.

### Seventh Cause of Action: Civil Conspiracy

### (Against All Defendants)

55. Plaintiff re-alleges each allegation contained within the above paragraphs.

56. Under Nevada law, Defendants acted for their own personal advantage in the form of earning legal fees paid to them by Montgomery and Edra Blixseth as they perpetrated their "scorched earth" litigation strategy against Plaintiff.

57. In this regard, Defendants conspired with Edra Blixseth and Dennis Montgomery to invade Plaintiff's privacy by hacking into his computers and emails for the purpose of perpetuating their scorched earth tactics against Plaintiff.

58. As a result of the Defendants' conspiracy in this regard, Plaintiff has lost approximately $630,000 in legal fees and an additional $400,000 defending himself against Defendants' wrongful litigation and litigation strategies employed against him in furtherance of Defendants' conspiracy.

59. Plaintiff demands compensatory and consequential damages against Defendants; and punitive damages for their oppression, fraud and malice relating to their conspiracy.

DATED this 16th day of December, 2010.

                                              Peter Chase Neumann
                                              Nevada Bar No. 00636
                                              136 Ridge Street
                                              Reno, NV 89501
                                              Tel.: 775 786 3750
                                              Fax: 775 786 8791
                                              E-mail: petercneumann@sbcglobal.net

Ronald J. Logar
Nevada State Bar No. 00303
Eric A. Pulver
Nevada State Bar No. 07874
LOGAR PULVER
1875 Plumas Street, Suite 1
Reno, NV 89509
Tel.: 775 786 5040
Fax: 775 786 7544
E-mail: eric@logarpulver.com

Attorneys for Plaintiff, Michael J. Flynn, Esq.

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P. 5(b), the undersigned hereby certifies that a true and correct copy of the foregoing FIRST AMENDED COMPLAINT was filed electronically via CM/ECF in the United States District Court, for the District of Nevada, with notice of same being electronically served by the Court on all of the attorneys of record registered with the CM/ECF system this 16th day of December, 2010.

/s/ *Cheryl L. Purcell*
Cheryl L. Purcell

-18-
FIRST AMENDED COMPLAINT