UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| MICHAEL J. FLYNN, | ) |
| Plaintiff, | ) 3:09-CV-00422-PMP-RAM |
| v. | ) |
| LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP, DEBORAH A. KLAR, and TERI PHAM, | ) ORDER |
| Defendants. | ) |

Presently before the Court is Defendant Liner Firm's Motion to Dismiss First Amended Complaint (Doc. #86) and request for judicial notice (Doc. #87), filed on January 18, 2011. Plaintiff Michael Flynn filed an Opposition (Doc. #92) on February 2, 2011. Defendant filed a Reply (Doc. #95) on February 14, 2011. Defendants Deborah Klar and Teri Pham filed a Joinder in Motion to Dismiss First Amended Complaint Filed on Behalf of the Liner Firm (Doc. #91) on January 25, 2011, and Joinder in Reply to Plaintiff's Response to Motion to Dismiss Filed on Behalf of the Liner Firm (Doc. #96) on February 15, 2011.

Also before the Court is Defendants Deborah Klar and Teri Pham's Motion to Dismiss First Amended Complaint for Failure to State a Claim (Doc. #90), filed on January 25, 2011. Plaintiff Michael Flynn filed an Opposition (Doc. #97) on February 25, 2011. Defendants Deborah Klar and Teri Pham filed a Reply (Doc. #101) on March 14, 2011.

///

**I. BACKGROUND**

Plaintiff Michael Flynn ("Flynn") is an attorney licensed in Massachusetts who appeared pro hac vice in this Court in the case of Dennis Montgomery v. eTreppid Technologies, 3:06-CV-00056-PMP-VPC ("eTreppid case"). (Am. Compl. (Doc. #77) at 2.) Defendant Liner, Grode, Stein, Yankelevitz, Sunshine, Regenstreif & Taylor, LLP ("Liner Firm") is a law firm based in Los Angeles, California. (Id. at 1.) Defendants Deborah Klar ("Klar") and Teri Pham ("Pham") are attorneys who previously were partners in the Liner Firm. (Id.) Pham and Klar also appeared pro hac vice in the eTreppid case, representing Dennis Montgomery ("Montgomery") following Flynn's withdrawal as Montgomery's attorney. (Id. at 1-2.)

Flynn alleges that Klar, Pham, and the Liner Firm initiated several state court and administrative proceedings against him in an effort to force him to turn over Montgomery's client file without Montgomery having to pay attorney's fees he owed Flynn or having to post a bond for such fees. (Id. at 3.) Specifically, Flynn alleges Defendants initiated an action in California superior court, filed an application for writ of possession in the California superior court action, filed a fee arbitration petition in San Diego, filed a bar complaint with the Massachusetts state bar, filed a perjurious declaration in the California and Nevada proceedings, and filed other "pleadings" in the California and Nevada actions in bad faith. (Id. at 3-4.) Flynn alleges Defendants did so in an abusive manner, relying on a perjured affidavit by Montgomery, and knowing that no basis existed for pursuing the actions in California. (Id. at 3-5.) Flynn further alleges Defendants engaged in these activities in a concerted effort to circumvent Nevada law which permits Flynn to exercise a retaining lien over the client file, to avoid this Court's jurisdiction to enforce the retaining lien, and to evade this Court's supervision of state secrets contained within Montgomery's client file. (Id.)

///

Flynn also alleges Defendants funded these various judicial and quasi-judicial proceedings through a fraudulent financing scheme whereby Defendants assisted Montgomery and his purported benefactor, Edra Blixseth, in obtaining millions of dollars in loans from various banks which Flynn alleges were procured through fraudulent loan applications and financial statements. (Id. at 6.) Flynn contends this activity led him to incur $400,000 in costs defending himself in the various proceedings.[1] (Id. at 16.)

Based on this conduct, Flynn brought suit in this Court asserting claims against Liner Firm, Klar, and Pham for abuse of process under Nevada law (count one), malicious prosecution under California law (count two), aiding and abetting violations of 18 U.S.C. § 1030 (count three), intentional infliction of emotional distress (count four), negligent infliction of emotional distress (count five), violation of rules and statutes (count six), invasion of privacy (count seven), negligence (count eight), and conspiracy (count nine). (Compl.) This Court previously granted Defendants' motions to dismiss these claims, but with leave to amend to correct the identified deficiencies with respect to some of the claims. (Orders (Doc. ##70-71).)

Flynn's First Amended Complaint asserts claims against Liner Firm, Klar, and Pham for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (counts four and six) and civil conspiracy (count seven). Flynn further alleges that Defendants aided and abetted Montgomery hacking into Flynn's computer and used the information obtained in the fee dispute proceedings. (Id. at 6-7.) Flynn brings claims for aiding and abetting violations of 18 U.S.C. § 1030 (count one), aiding and abetting violations of the Stored Communications Act (count two), and aiding and abetting invasion

---

[1] Flynn also contends Defendants' conduct caused him to lose $630,000 in attorney's fees which Montgomery owes Flynn. However, as this Court previously explained, Defendants' alleged conduct did not cause Flynn to "lose" fees for which he received a Judgment which since has become uncollectible due to Montgomery's bankruptcy. (Order (Doc. #71) at 21.)

3

of privacy (count three) based on these allegations.[2]

Defendants Liner Firm, Klar, and Pham now move to dismiss the First Amended Complaint, arguing Plaintiff fails to state a claim on each count of the First Amended Complaint for various reasons. Defendants also contend Plaintiff should not be permitted to assert new claims where the Court's prior Order permitted Plaintiff only to correct the identified deficiencies in the prior Complaint. Plaintiff opposes the motion, and requests leave to amend to add the new claims.

## II. LEGAL STANDARD

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

### A. Aiding and Abetting 18 U.S.C. § 1030 Violation - Count One

Defendants argues Flynn's claim under 18 U.S.C. § 1030 fails because the First Amended Complaint fails to allege he suffered physical injury as defined under the applicable statute. Defendants also argue the First Amended Complaint fails to allege what

---

[2] The counts in the First Amended Complaint are misnumbered, as there is no count five. For ease of reference, the Court will refer to the counts as they are numbered in the First Amended Complaint.

4

acts Defendants undertook to aid and abet Montgomery's alleged hacking of Flynn's computer. Defendants further contend no claim exists under § 1030 for aiding and abetting. Defendants Klar and Pham also argue that Flynn's § 1030 claim is barred by the statute of limitations.

Title 18 U.S.C. § 1030(a)(2)(C) imposes criminal penalties on a person who "intentionally accesses a computer without authorization or exceeds authorized access," and thereby obtains information from a protected computer. Section 1030(b) also imposes liability for any person who "conspires to commit or attempts to commit an offense under subsection (a)." Section 1030(g) provides a civil action for "[a]ny person who suffers damage or loss by reason of a violation of this section."

The statute's plain language sets forth who is liable under § 1030: a primary violator, a person who attempts a primary violation, and a co-conspirator of a primary violator. Section 1030 does not provide for aiding and abetting liability. See Moreno-Morante v. Gonzales, 490 F.3d 1172, 1175 (9th Cir. 2007) (stating that court's "starting point" for statutory construction is the statute's plain language, and if it is unambiguous, the court's inquiry is at an end). Had Congress intended for aiding and abetting civil liability to apply, it could and would have said so. Freeman v. DirecTV, Inc., 457 F.3d 1001, 1006 (9th Cir. 2006) (reaching a similar conclusion with respect to 18 U.S.C. §§ 2702, 2707). The Court therefore will dismiss this claim with prejudice, as aiding and abetting civil liability does not exist under § 1030.

Moreover, even if such liability existed, Flynn has failed to allege facts that Defendants aided and abetted Montgomery's hacking. Flynn alleges Defendants were "recipients of the 'hacked' information" and used the hacked information knowing its illicit source. (First Am. Compl. at ¶¶ 10, 17, 28.) However, Flynn does not allege Defendants substantially assisted, or even encouraged or induced, Montgomery in the primary violation, the hacking itself. See Ponce v. S.E.C., 345 F.3d 722, 737 (9th Cir. 2003) (stating that

aiding and abetting in context of the securities laws involves (1) a primary violation of the relevant securities laws; (2) the aider and abettor knew of the primary violation and of his or her own role in furthering it; and (3) the aider and abettor provided substantial assistance in the primary violation). Defendants' alleged use of hacked information after the fact does not state a claim that Defendants aided and abetted the hacking.

Aiding and abetting liability does not exist as a matter of law under § 1030. The Court therefore will dismiss Flynn's claim in count one with prejudice as to all Defendants.

### B. Aiding and Abetting Violations of 18 U.S.C. § 2707 (Count Two)

Defendants move to dismiss this claim, contending that aiding and abetting liability also does not exist under 18 U.S.C. § 2707. Flynn does not respond on this point. Flynn's failure to respond constitutes a consent to granting the motion. LR 7-2(d). Moreover, aiding and abetting liability does not exist under 18 U.S.C. § 2707 as a matter of law. Freeman, 457 F.3d at 1005-06. The Court therefore will dismiss count two with prejudice as to all Defendants.

### C. Aiding and Abetting Invasion of Privacy (Count Three)

Defendants argue this claim should be dismissed because to the extent it is based on Defendants' alleged use of hacked information in the various judicial and quasi-judicial proceedings, such actions are privileged. Defendants also argue Flynn has failed to allege facts of what they did to aid and abet Montgomery's invasion of privacy, what damages Flynn suffered as a result, and why he had an expectation of privacy in his computer after he knew Montgomery had been hacking his computer.

Flynn responds that the litigation privilege does not apply because he is not alleging public disclosure of private facts, he is alleging the tort of intrusion. Flynn contends he has alleged sufficient facts regarding Defendants' aiding and abetting, that he suffered emotional and physical damages due to the stress of the hacking and the disclosed information, and that he had a reasonable expectation of privacy in his own personal

6

computer.

This Court previously dismissed Flynn's invasion of privacy claim in the original Complaint because Flynn failed to allege facts in support of his invasion of privacy claim. The Court noted that Flynn did not identify when Montgomery hacked into his computer, what information he obtained, what acts Defendants undertook that invaded Flynn's privacy, or how Defendants used the information Montgomery obtained. The Court dismissed this claim without prejudice.

According to the First Amended Complaint, Defendants used the hacked information "against [Flynn] in the litigation in Nevada and California," and that such use caused injury to Flynn's reputation, humiliation, and embarrassment. (First Am. Compl. ¶¶ 38-39.) While Flynn denies he is asserting a claim based Defendants' alleged disclosure of private facts in the judicial and quasi-judicial proceedings Defendants initiated against Flynn, that is what he has alleged in the First Amended Complaint. Flynn does not clarify under what law he brings this claim, but if it is California law, this tort is barred by the litigation privilege in California. Cal. Civ. Code § 47(b); Rusheen v. Cohen, 128 P.3d 713, 718 (Cal. 2006). If the claim is brought under Nevada law, Flynn has failed to allege any private facts Defendants publicly disclosed which would be "offensive and objectionable to a reasonable person of ordinary sensibilities." Montesano v. Donrey Media Group, 668 P.2d 1081, 1084 (Nev. 1983). The only facts which Flynn alleges Defendants revealed about him as a result of Montgomery's hacking was that Flynn maintained client files in California. (First Am. Compl. ¶ 29.) No reasonable jury could conclude that the revelation that Flynn stored client files in California would be offensive to a reasonable person of ordinary sensibilities.

Further, even if Flynn were alleging only intrusion, rather than public disclosure of private facts, Flynn's First Amended Complaint suffers from the same defects as his original Complaint. Under Nevada law, to recover for the tort of intrusion, a plaintiff must

7

1  allege "1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of
2  another; 3) that would be highly offensive to a reasonable person." People for Ethical
3  Treatment of Animals v. Bobby Berosini, Ltd., 895 P.2d 1269, 1279 (Nev. 1995); see also
4  Folgelstrom v. Lamps Plus, Inc., 195 Cal. App. 4th 986, 992 (Cal. App. Ct. 2011) (stating
5  elements for tort of intrusion as "(1) intrusion into a private place, conversation or matter,
6  (2) in a manner highly offensive to a reasonable person").  Although the First Amended
7  Complaint identifies when Montgomery hacked into Flynn's computer, the First Amended
8  Complaint does not identify what acts Defendants took that aided and abetted
9  Montgomery's hacking that would support a viable intrusion claim other than that
10 Defendants used and disclosed the hacked information in litigation.  As discussed with
11 respect to Flynn's § 1030 claim, Defendants' alleged after-the-fact use of hacked
12 information does not amount to aiding and abetting the hacking itself.  Moreover, Flynn
13 denies that he is alleging public disclosure of private facts, and Defendants' use of the
14 information in the judicial and quasi-judicial proceedings is privileged in any event.
15      Flynn does not request leave to further amend this claim, nor does he explain
16 what he would allege if given another opportunity to amend, other than his attempt to
17 morph his public disclosure of private facts allegations into a claim for intrusion.  As
18 explained above, such a claim would not survive dismissal because Flynn does not identify
19 any factual allegations he could make as to what acts Defendants took to aid and abet
20 Montgomery's alleged hacking.  The Court therefore will dismiss this claim with prejudice
21 as to all Defendants.
22      **D.  RICO and RICO Conspiracy (Counts Four and Six)**
23      Defendants object to Flynn pleading new RICO claims when the Court did not
24 grant Flynn leave to do so.  Defendants also argue that Flynn cannot state a RICO injury or
25 causation because the only predicate criminal acts Flynn identifies are bank fraud and
26 related mail and wire fraud.  Defendants contend the primary victims of these predicate acts

8

are the allegedly defrauded banks, not Flynn, and that his alleged injury of having to defend litigation funded by this alleged fraud is too remote and attenuated to support causation under the antitrust laws. Flynn responds that he is a direct victim of the RICO enterprise because Defendants used the fraudulently obtained funds to wage a litigation war against him. Flynn also requests that, to the extent the prior Court's Orders did not grant him leave to add these new claims, he be given such leave now.

Pursuant to 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." RICO provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

For proximate cause to exist, there must be "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992). A plaintiff's injury is too attenuated from the RICO violation where, for example, the cause of the plaintiff's asserted harms arises from a set of actions "entirely distinct from the alleged RICO violation." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458 (2006).

For example, in Anza, the plaintiff sold steel mill products and related supplies and services. Id. at 453. The defendant was engaged in a similar business. Id. at 454. The plaintiff alleged the defendant "adopted a practice of failing to charge the requisite New York sales tax to cash-paying customers," which allowed the defendant to "reduce its prices

9

without affecting its profit margin." Id.  The plaintiff alleged the defendant submitted fraudulent tax returns to the New York State Department of Taxation and Finance to conceal its conduct.  Id.  Based on this alleged fraud, the plaintiff asserted two RICO claims.  Id.  The United States Supreme Court held that proximate cause was lacking because the plaintiff's asserted harms arose from "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."  Id. at 458.

In addition to comparing the relationship between the harm and the RICO violation, courts consider the underlying principles motivating the direct injury requirement. Id. at 458-59.  Among these considerations are the difficultly in determining the amount of the plaintiff's damages resulting from the defendant's conduct, the complexities involved in apportioning damages to avoid the risk of multiple recoveries by different victims, and whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law.  Holmes, 503 U.S. at 269-71.

Here, the alleged RICO violations (bank fraud and related mail and wire fraud) are too remote from the asserted injury (expenses incurred by a person other than the defrauded banks in entirely separate and unrelated litigation).  Flynn's asserted harms of incurring litigation costs in various civil suits and bar complaints arise from a set of actions entirely distinct from the alleged RICO violations of bank fraud.  Proximate cause is therefore lacking as a matter of law.

The considerations underlying the directness requirement support this conclusion. First and foremost, the banks are the direct victims of the alleged fraud, and can be expected to vindicate any fraud perpetrated against them.  There will be no complicated evaluation of damages in such a case, as the question of the amount of loss in relation to a fraudulent loan would be a relatively straightforward determination.

In contrast, it would be difficult to determine the amount of Flynn's damages resulting from Defendants' alleged conduct because such an inquiry would involve

resolution of complex and uncertain factual questions, such as whether Defendants would have taken the same actions against Flynn even without the alleged bank fraud.  There are many reasons why clients and counsel decide to take, or not to take, certain acts in litigation.  The availability of funds certainly is a consideration, but it is not the only one.

There does not appear to be a risk of multiple recoveries by different victims, as the banks would be seeking to recover any defrauded funds, while Flynn seeks to recover his personal litigation expenses.  Nevertheless, the remoteness of the injury in relation to the RICO acts, the availability of a direct victim to vindicate the law, and the difficulty of determining the amount of Flynn's damages caused by the RICO violations compel the conclusion that proximate cause is lacking as a matter of law.  The Court therefore will dismiss the RICO claims with prejudice as to all Defendants.

**E.  Conspiracy (Count Seven)**

Defendants argue that because Flynn fails to plead any viable claim for relief, his conspiracy claim cannot survive.  Defendants Klar and Pham further argue that an attorney cannot conspire with her client.  Flynn responds that his conspiracy claim incorporates by reference all of the allegations in the Complaint, that he alleges Defendants acted together to achieve the unlawful object of precluding Plaintiff from recovering his fees and costs, and Defendants took predicate acts such as using Montgomery's perjured affidavit to support the various court and state bar proceedings.

Under California law, conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994).  "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." Id.  Consequently, a civil conspiracy "does not give rise to a cause of action unless a civil wrong has been committed resulting in

damage." Id. (quotation omitted).  Nevada law is in accord.  Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005) (per curiam) (stating that "an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud"), abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008).

Because Plaintiff has failed to allege an underlying tort, the Court also will dismiss the conspiracy claim.  Flynn does not request leave to further amend this claim, nor does he explain what he would allege if given another opportunity to amend.  The Court therefore will dismiss this claim with prejudice as to all Defendants.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Liner Firm's Motion to Dismiss First Amended Complaint (Doc. #86) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants Deborah Klar and Teri Pham's Motion to Dismiss First Amended Complaint for Failure to State a Claim (Doc. #90) is hereby GRANTED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants Liner, Grode, Stein, Yankelevitz, Sunshine, Regenstreif & Taylor, LLP; Deborah Klar; and Teri Pham, and against Plaintiff Michael Flynn.

DATED: July 15, 2011

_____
PHILIP M. PRO
United States District Judge